UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCRETIA LEGAUX,<br><br>                      Plaintiff,<br><br>    v.<br><br>MERCER INVESTMENTS, INC.,<br><br>                      Defendant. | Case No. 20-cv-2041-BAS-AGS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (ECF No. 11)** |

On October 15, 2020, Plaintiff Lucretia Legaux commenced this lawsuit against Defendant Mercer Investments, Inc. (Compl., ECF No. 1.) On December 15, 2020, Plaintiff filed an amended complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as well as state anti-discrimination laws. (First Am. Compl. ("FAC") ¶ 1, ECF No. 6.) Plaintiff alleges that Defendant engaged in racially discriminatory practices and retaliation against her, forcing her to terminate her employment as Defendant's Operations Manager. (*Id.* ¶ 6.)

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's action for lack of subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. (Mot., ECF No. 11.) Defendant argues that dismissal is warranted because the claims brought do not require an

application of federal law and because the state law claims predominate over the federal law claims. (*Id.*)  Plaintiff opposes.  (Opp'n, ECF No. 14.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **DENIES** Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

## I. BACKGROUND[1]

### A. Factual Allegations Against Defendant

Plaintiff Lucretia Legaux is an individual with her primary residence in San Diego, California.  (FAC ¶ 5.)  Defendant Mercer Investments, Inc. is "in [the] business of real estate [and] providing brokerage and property management services to the public" and is a corporation with its principal place of business in California.  (*Id.* ¶ 6.)  Prior to her employment with Defendant, Plaintiff had over thirteen years of operations and real estate management experience.  (*Id.* ¶ 23.)  In October 2018, Defendant hired Plaintiff as a Receptionist and Administrative Assistant.  (*Id.* ¶ 22.)  Barbara Mercer, co-owner of Mercer Investments, hired Plaintiff with a promise of growth within the company.  (*Id.* ¶ 25.)

#### 1. Discrimination Regarding Compensation

In August 2019, there was a new opening for the Operations Manager position at Mercer Investments.  (FAC ¶ 27.)  Kelli Mercer-Chandler, Barbara Mercer's daughter, temporarily filled the position and was compensated at a rate of $32.00 per hour.  (*Id.* ¶ 80.)  The former Operations Manager, Kristen Carter, was compensated at a similar rate of $31.95 per hour.  (*Id.* ¶¶ 27, 76.)  Both women are white.  (*Id.* ¶ 52.)

---

[1] These facts are all taken from the Complaint.  For this Motion to Dismiss, the Court accepts all of Plaintiff's factual allegations as true.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Only after unsuccessfully outsourcing a permanent manager, Barbara Mercer then met with Plaintiff to discuss a possible promotion. (*Id.* ¶ 71.) The following month, Barbara Mercer orally offered Plaintiff the managerial position. (*Id.* ¶¶ 35, 88.) Included in this oral offer was the promise of a pay raise from $22.00 to $25.00 per hour, with a stipulation that Plaintiff would be on a 90-day probationary period as manager prior to receiving the pay raise. (*Id.* ¶¶ 37, 85, 87.)

During the probationary period, Plaintiff assumed the responsibilities of Operations Manager. (*Id.* ¶¶ 38, 91.) Plaintiff also continued to assist as Receptionist and assumed the role of Leasing Agent due to understaffing. (*Id.* ¶¶ 96, 151.) Her compensation throughout this period remained at $22.00 per hour. (*Id.* ¶ 96.) Plaintiff did not receive any of the benefits typically offered to Leasing Agents, such as reimbursements for work expenses and leasing bonuses, nor did she take lunch breaks because of her increased workload. (*Id.* ¶¶ 49, 152, 155.)

In October 2019, Plaintiff met with Barbara Mercer to discuss terminating the probationary period early given Plaintiff's extensive managerial background. (*Id.* ¶ 97.) Plaintiff also requested a salary increase to $31.95 per hour, matching that of the previous manager. (*Id.* ¶ 98.) The probationary period was not terminated, and Barbara Mercer never gave Plaintiff a definitive answer regarding the requested salary increase. (*Id.* ¶¶ 99–100.)

### 2. Retaliation for Engaging in a Protected Activity

Following Plaintiff's probationary period, Barbara Mercer instructed Plaintiff to speak to Mercer's son-in-law, Michael Chandler, regarding Plaintiff's promised raise. (FAC ¶¶ 41, 126.) Plaintiff spoke to Chandler shortly after. (*Id.* ¶ 43.) She also attempted to speak to Barbara Mercer and Kelli Mercer-Chandler regarding the raise, but the "request . . . was never taken seriously nor accomplished." (*Id.* ¶ 59.)

In January 2020, Chandler demoted Plaintiff from the Operations Manager position. (*Id.* ¶¶ 44, 138.) Plaintiff argues the demotion was in retaliation for the protected activity of opposing the wage discrimination. (*Id.* ¶ 192.) Chandler said the "salary increase was

never offered[,]" and that Plaintiff's "current pay was generous" without providing further explanation.  (*Id.* ¶ 45.)

### 3. Discrimination Regarding Image

Plaintiff also asserts that Barbara Mercer and her husband, Olen Mercer, treated other employees, all of which are or appear to be white, like family.  (FAC ¶¶ 103–04.) The Mercers posted regular updates on social media regarding new employees at Mercer but made no mention of Plaintiff when she was initially hired or when she was promoted to Operations Manager.  (*Id.* ¶¶ 105–08.)  Plaintiff was also expected to show rental properties in addition to her normal responsibilities.  (*Id.* ¶ 117.)  She was primarily sent to low-income neighborhoods or those with large minority demographics.  (*Id.* ¶¶ 118–22.) Plaintiff claims that these are examples of Defendant's racially discriminatory practices against her with respect to image.  (*Id.* ¶ 185.)

In late January 2020, Plaintiff was "forced to resign from employment with Defendant due to the unfulfilled promises and blatant discrimination at Mercer." (*Id.* ¶ 60.)

## B. Legal Allegations Against Defendant

Based on the foregoing, Plaintiff asserts the following thirteen causes of action: (1) racial discrimination, violating 42 U.S.C. § 2000e-2 and section 12940 of the California Government Code; (2) retaliation for engaging in a protected activity, violating section 12940 of the California Government Code; (3) creating a hostile work environment, violating section 12940 of the California Government Code; (4) failing to prevent discrimination, violating section 12940 of the California Government Code; (5) constructive discharge; (6) failure to pay timely wages; (7) nonpayment of wages, violating section 200 of the California Labor Code; (8) negligent misrepresentation; (9) breach of oral contract; (10) unjust enrichment; (11) unfair business practices, violating section 17200 of the California Business & Professions Code; (12) intentional infliction of emotional distress; and (13) negligent infliction of emotional distress.  (FAC ¶¶ 158–315.)

Plaintiff asserts that this Court has jurisdiction over her first count pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-2.  (*Id.* ¶¶ 14–15.)  Plaintiff asserts that this Court

thus has supplemental jurisdiction over her related state law claims pursuant to 28 U.S.C. § 1367. (*Id.* ¶ 17.) Defendant now moves to dismiss Plaintiff's Complaint, arguing that Plaintiff does not properly assert a Title VII claim, thereby failing to invoke federal question jurisdiction, that Plaintiff is forum-shopping, and that Plaintiff's state law claims substantially predominate over the federal law claim. (Mot.)

## II.     LEGAL STANDARD

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to dismiss a claim based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

A plaintiff invoking this jurisdiction must show "the existence of whatever is essential to federal jurisdiction," and if the plaintiff fails to do so, the court "must dismiss the case, unless the defect [can] be corrected by amendment." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam) (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)), *abrogated on other grounds by Hertz Corp v. Friend*, 559 U.S. 77 (2010).

A challenge to subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court limits its review to the allegations in the complaint, assumes the allegations in the complaint are true, and draws all reasonable inferences in

favor of the party opposing dismissal. *Id.*; *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## III.  ANALYSIS

Defendant facially challenges Plaintiff's Complaint and attacks jurisdiction over the claims on two grounds. (Mot.) First, Defendant argues Plaintiff fails to assert a substantial federal question. In the same vein, Defendant contends the original complaint, acting as a judicial admission, demonstrates a lack of intent to assert federal question jurisdiction. (*Id.*) Second, Defendant argues that, even if there is federal question jurisdiction, Plaintiff's state law claims predominate over the federal law claim, so the Court should decline supplemental jurisdiction over them. (*Id.*) Although there are colorable grounds for some of Defendant's arguments, the Court finds that there is federal question jurisdiction over the suit and exercising supplemental jurisdiction over the state law claims is appropriate.

### A.  Federal Question Jurisdiction

Under the federal question statute, a district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case necessarily "arises under" federal law when a plaintiff's complaint establishes "either that (1) federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law." *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004). Accordingly, the plaintiff's complaint must be "well-pleaded" such that the claim itself involves a federal question for the court to assert jurisdiction. *See Taylor v. Anderson*, 234 U.S. 74, 75 (1914).

There is no federal question jurisdiction when the claim asserted is "insubstantial." *Hagans v. Lavine*, 415 U.S. 528, 537–38 (1974). A claim is insubstantial when "its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Id.* at 538.

### 1.     Federal Claim Arising Under Title VII

Here, Plaintiff alleges a Title VII violation arising under 42 U.S.C. § 2000e-2.[2] Plaintiff alleges Defendant unlawfully discriminated against her with respect to compensation and public image, unlawfully retaliated against her for engaging in a protected activity, created a hostile work environment, and failed to take reasonable steps necessary to prevent discrimination. (FAC ¶¶ 1–2, 225.)

"[A]n employee makes out a Title VII violation by showing discrimination because of race, sex, or another protected factor. Such discrimination is characterized by the statute as 'an unlawful employment practice.'" *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 847 (9th Cir. 2002). Title VII itself does not impose a heightened burden of proof on plaintiffs claiming discrimination. *Id.* at 848. Accordingly, Plaintiff need only allege sufficient facts to establish racial discrimination by a preponderance of evidence. *Id.* at 853. For the following reasons, the Court finds that Plaintiff's Amended Complaint, taking all alleged facts to be true, sufficiently raises a federal question under Title VII so as to confer subject matter jurisdiction.

First, Plaintiff, who is of African American descent, is a member of a protected class. (FAC ¶ 54.) Second, Plaintiff brings forth several adverse employment actions she allegedly suffered during her employment at Mercer. Namely, Plaintiff claims she was

---

[2] Title VII provides:

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

undercompensated despite the variety of roles she simultaneously assumed during the probationary period, says she was wrongly demoted from Operations Manager following her request for a salary increase, received disparate treatment with respect to public image on social media, and was given property showings only in minority-dominated neighborhoods. (*Id.* ¶¶ 168–74, 186–87.) Third, Plaintiff asserts she was appropriately qualified for both the Receptionist and Operations Manager positions. (*Id.* ¶ 24.) Lastly, Plaintiff specifically highlights the higher wages and numerous benefits offered to both Mrs. Mercer-Chandler and Ms. Carter, which were not offered to her when she assumed the role of Operations Manager. (*Id.* ¶¶ 168–69.) Assuming the foregoing to be true, the Court finds Plaintiff properly pleads a federal question in her Amended Complaint.

### 2. Amended Complaint Serving as a Judicial Admission

Defendant next points to Plaintiff's original complaint, which only invoked state law. Defendant claims this is "a judicial admission" that Plaintiff did not originally intend to raise a federal question and is forum shopping. (Mot.) The Court is unconvinced and finds that Plaintiff's original complaint was neither a judicial admission nor evidence of forum shopping.

As a matter of course, a party has the right to amend its complaint once before a responsive pleading is served. Fed. R. Civ. P. 15(a)(1); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185–86 (9th Cir. 1987). Further, courts generally offer plaintiffs a fair opportunity to be heard before dismissing their claims for lack of jurisdiction, unless it is evident that any deficiencies cannot be resolved by amendment. *See May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980). The Court finds that Plaintiff remedied the lack of federal question jurisdiction in the original complaint when she amended her complaint to arise under Title VII. Though the original complaint failed to invoke a federal question, Plaintiff used her right to amend to appropriately address the deficiency.

Notwithstanding Plaintiff's amended pleading, Defendant also argues that, per the law of judicial admissions, Plaintiff's original complaint serves as evidence of forum

shopping and is sufficient grounds for dismissal. (Mot.) Judicial admissions are allegations or statements in the pleadings, which can withdraw facts from contention and are legally binding on the party making them. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). The Court finds the judicial admission doctrine inapplicable. Typically, this doctrine applies to factual allegations and statements made by parties and attorneys in pleadings and filings. *Id.* Defendant incorrectly applies this doctrine to Plaintiff's legal claims and asserted basis for jurisdiction.

Further, it is well-established that amended pleadings ordinarily supersede prior pleadings. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). Accordingly, when Plaintiff amended her complaint to invoke federal question jurisdiction, the original complaint relying on diversity jurisdiction was superseded.[3] And given that her factual allegations remain largely unamended, a federal question had previously existed based on the underlying dispute. The Court therefore rejects Defendant's judicial admission argument and confirms that it has jurisdiction over the suit.

### 3. Plaintiff Is the Master of Her Claim

The Court similarly rejects Defendant's argument that, because California's Fair Employment and Housing Act ("FEHA") is supposedly more expansive than Title VII, Plaintiff "loses nothing by proceeding solely in state court." (Mot.) Per the "well-pleaded complaint" rule, a plaintiff is the master of her claim, giving her the ability to file suit in any appropriate forum. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The power to choose among available fora rests with the plaintiff, not the defendant or the court. *Id.*

---

[3] In her Opposition, Plaintiff explains that the original complaint had incorrectly relied on diversity jurisdiction because "an improper party, with a similar name, had been named as the Defendant[.]" (Opp'n.) Plaintiff's attorneys allegedly discovered the mistake after the original complaint had already been filed, so they included the claims in the amendment. (*Id.*)

Because Plaintiff properly raised a federal question under Title VII in her Amended Complaint, she has the choice of filing her claims in either federal or state court. Therefore, it is of no matter that Plaintiff would purportedly lose nothing by proceeding in state court.

### B. Supplemental Jurisdiction

The supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Under § 1367(c), a district court may use its discretion to decline supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Underlying the § 1367(c) inquiry are considerations of judicial economy, convenience and fairness to litigants, and comity. "[I]f these are not present[,] a federal court should hesitate to exercise jurisdiction over state claims[.]" *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Under § 1367(c), "a district court can decline jurisdiction under any one of [the statute's] four provisions." *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998). When a district court declines supplemental jurisdiction over a state law claim pursuant to one of the first three provisions of the statute—that is, § 1367(c)(1)–(3)—the court need not state its reasons for dismissal. *Id.* However, when the court declines supplemental jurisdiction pursuant to the statute's "exceptional circumstances" provision —that is, § 1367(c)(4)—the court must "articulate why the circumstances of the case are exceptional," and consider whether values of judicial economy, convenience, fairness, and

comity provide compelling reasons for declining jurisdiction. *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1552 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Further, the party invoking such discretionary analysis by the court should identify the relevant subsections warranting dismissal. Discretionary Exercise of Supplemental Jurisdiction Under 28 U.S.C.A. § 1367(c), 13D Fed. Prac. & Proc. Juris. § 3567.3 (3d ed. 2021). Here, Defendant's Motion to Dismiss points specifically to subsections (2) and (4), arguing that Plaintiff's twelve state law claims predominate over the single federal law claim and that values of comity, fairness, and judicial efficiency justify this Court declining supplemental jurisdiction. (Mot.) The Court finds that it retains the power to exercise supplemental jurisdiction over Plaintiff's twelve state law claims under § 1367(a) and that no ground enumerated in § 1367(c) is persuasive enough to decline jurisdiction.

### 1. Common Nucleus of Operative Fact

State and federal claims form part of the same case or controversy under § 1367(a) when they share a common nucleus of operative fact. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). The reference to a "common nucleus" suggests that courts need only examine one factual scenario to understand all claims brought forth. *Garcia v. Rite Aid Corp.*, No. CV 17-02124 BRO (SKx), 2017 WL 1737718, at *9 (C.D. Cal. May 3, 2017). In other words, claims should generally "arise from the same conduct on the part of" the defendant. *Id.* As Plaintiff highlights, all her claims arise from the singular period of her employment at Mercer. Though there are multiple incidents of alleged discrimination during Plaintiff's employment, the Court finds them all to arise from the general and repeated pattern of discrimination Plaintiff allegedly faced. *See id.* (holding that all of the plaintiff's claims arose from the same relationship and treatment between the defendant and the plaintiff so the court could assert supplemental jurisdiction); *see also Shanks v. N. Cal. Cement Masons Joint Apprenticeship Training Comm.*, No. C-93-0609 MHP, 1993 WL 150273, at *4 (N.D. Cal. Apr. 29, 1993) (finding that a plaintiff's state law claims were sufficiently related to the federal law claims since they arose from the

same factual events). Therefore, the Court finds that it can assert supplemental jurisdiction over Plaintiff's twelve state law claims because they form part of the same case or controversy as required by § 1367(a).

### 2. Predomination of State Law Claims

Invoking the discretionary grounds for declining supplemental jurisdiction, Defendant first contends that Plaintiff's state law claims "substantially predominate" over the federal law claim because Plaintiff is seeking relief primarily through state law. (Mot.) State claims substantially predominate over federal claims when they constitute the "real body of a case, to which the federal claim is only an appendage." *Gibbs*, 383 U.S. at 727. In making this determination, federal courts typically consider whether the proof required, scope of issues raised, or comprehensiveness of remedy sought warrant resolution by a state court. *Id*. at 727–28.

In this case, the issues raised all turn on similar labor and employment laws under Title VII, FEHA, and the California Labor Code. (FAC.) Plaintiff's claim under the California Business and Professions Code likewise is predicated on violations of these laws. (*Id.*) And even though Plaintiff looks to state law for many of her claims, she also references federal law for several of those claims. (*See* FAC ¶¶ 181–232 (invoking Title VII in three additional discrimination causes of action).)

Further, in her Amended Complaint, Plaintiff draws on the same incidents of Defendant's allegedly discriminatory behavior to support her thirteen claims. As such, the evidence required to prove Plaintiff's claims would largely be identical for each claim because they are so factually similar. Moreover, Defendant does not offer a convincing explanation for why "the proof required" or "comprehensiveness of remedy sought warrant resolution by a state court." *See Gibbs*, 383 U.S. at 727; *see also Chavez v. Suzuki*, No. 05CV1569 BTM(BLM), 2005 WL 3477848, at *2 (S.D. Cal. Nov. 30, 2005) (noting "there is nothing wrong with [a] [p]laintiff choosing to file suit in federal court because [she] believes it is more favorable to [her]").

In addition, Defendant offers a quantitative argument as to why Plaintiff's state law claims substantially predominate.  The largely numerical contention points out that Plaintiff's twelve state law claims outnumber the single federal claim.  However, "[w]hether state law claims substantially predominate over federal claims is a qualitative—not quantitative —inquiry . . . [and] [t]he mere fact that a plaintiff's state claims outnumber [her] federal claims, without more, is insufficient to satisfy the 'substantially predominate' standard." *Navarro v. City of Fontana*, No. EDCV 09-1525-VAP (DTBx), 2010 WL 11459998, at *3 (C.D. Cal. Jan. 6, 2010).  Accordingly, the Court rejects Defendant's argument raising this basis for declining supplemental jurisdiction.

### 3. Exceptional Circumstances

The Court can also decline supplemental jurisdiction if there are exceptional circumstances warranting dismissal. *Exec. Software N. Am., Inc.*, 24 F.3d at 1558. Typically, such circumstances must be compelling or unusual, extending "beyond the circumstances identified in subsections (c)(1)–(3)." *Id.*  In exercising discretion under § 1367(c)(4), courts evaluate the *Gibbs* factors of judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together. *See San Pedro Hotel Co.*, 159 F.3d at 478.

In this case, all thirteen claims apply a virtually identical factual scenario and are closely intertwined, so it would be an inappropriate use of judicial resources to bifurcate trials in federal and state courts.  Declining supplemental jurisdiction over the state law claims would not only create a risk of multiplicity in litigation but also substantially increase litigation costs for both parties.  Further, there are no logistic inconveniences to either party from the Court asserting supplemental jurisdiction; on the contrary, it would appear to be more convenient to litigate all claims in a single forum.  Defendant also does not highlight any convincing reasons why it would be unfair for the Court to exercise supplemental jurisdiction.  On the other hand, Plaintiff's expectation to try all claims together weighs in favor of the Court retaining jurisdiction. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006).

- 13 -

20cv2041

Defendant also advances forum shopping as a separate reason for declining jurisdiction. (Mot.) However, given that Plaintiff has the power to choose her own forum in which to bring her claims, "[t]his sort of forum-shopping is . . . not an 'exceptional' circumstance giving rise to compelling reasons for declining jurisdiction, as required by section 1367(c)(4)." *See Chavez*, 2005 WL 3477848, at *2. The Court concludes there are no compelling reasons to decline supplemental jurisdiction over Plaintiff's state law claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Title VII claim poses a substantial federal question and is not subject to dismissal. Further, the Court concludes that it has supplemental jurisdiction over Plaintiff's state law claims. Thus, the Court **DENIES** Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**DATED: August 2, 2021**

Hon. Cynthia Bashant
United States District Judge